UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILLIE RAY ROBERTSON, JR.                          CIVIL ACTION

VERSUS                                             NO. 17-13614

NANCY A. BERRYHILL, ACTING                         SECTION "H" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Plaintiff Willie Ray Robertson, Jr. seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Act. 42 U.S.C. § 1382c. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

I.    PROCEDURAL HISTORY

On February 2, 2015, Robertson filed a Title II application for a period of disability and DIB, alleging a disability onset date of May 15, 2013, and impairments of "cervical disk disease, chronic nerve damage upper left neck and extremity, [and] severe depression." (Tr. 206). After his claim was denied at the agency level, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 13, 2016. (Tr. 79–113). The hearing was conducted by video, with plaintiff appearing in Houma, Louisiana, and the ALJ presiding from New Orleans, Louisiana. (Tr. 10). The ALJ issued

a decision on November 10, 2016, finding that Robertson was not disabled. (Tr. 10–21). On November 7, 2016, Robertson requested review of the ALJ's decision. (Tr. 180). After review, the Appeals Council upheld the ALJ's decision on September 28, 2017, and the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1–3).

Plaintiff filed his complaint in this court on November 29, 2017. Record Doc. No. 1. After delays in effectuating service, Record Doc. No. 5, he failed timely to file his memorandum of facts and law by the July 30, 2018 deadline set by the court. Plaintiff was notified that his case would be called on August 22, 2018, unless he filed the required brief. Record Doc. No. 19. Plaintiff filed his memorandum of facts and law on August 20, 2018. Record Doc. 20. The Commissioner filed her reply memorandum of facts and law on September 27, 2018. Record Doc. No. 22.

II.    STATEMENT OF THE ISSUE ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.    Substantial evidence did not support the ALJ's residual functional capacity finding; specifically, "the Administrative Law Judge erred in failing to grant the claimant disability insurance benefits where substantial medically documented evidence shows that the claimant is disabled from his former job and the government failed to properly take into account the substantial medical and vocational evidence and testimony that the claimant is unable to engage in any gainful activity."

B.    The ALJ did not properly determine how much weight to accord the opinions, diagnoses and medical evidence of plaintiff's treating physicians and psychologist as compared to the opinions of the reviewing physicians.

2

Record Doc. No. 20 at p. 2.

III.    ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

1.    Robertson meets the insured status requirements of the Social Security Act through December 31, 2018.

2.    Plaintiff engaged in substantial gainful activity during the following period: June 30, 2014 through September 30, 2014. However, there was a continuous 12-month period during which plaintiff did not engage in substantial gainful activity.

3.    He has severe impairments consisting of degenerative disc disease of the cervical spine with C7 radiculopathy, nerve damage of the neck on the left side and depression.

4.    Robertson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    Plaintiff has the residual functional capacity to perform light work, with certain postural and other limitations.

6.    Robertson cannot perform his past relevant work as a retail sales manager or assistant manager.

7.    Considering plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform, including cashier, information clerk and inspector.

8.    His subjective allegations were not found to be fully consistent with the medical evidence of record.[1]

---

[1]

Recently, in March 2016, Social Security Ruling 16-3p superseded Social Security Ruling 96-7p. SSR 16-3P. (S.S.A. Mar. 16, 2016.) SSR 16-3p eliminated the use of the term "credibility" in evaluating an individual's subjective symptom evaluation. Id. Now, in determining whether an individual is disabled, the ALJ is to consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted

9.    Robertson has not been under a disability from May 15, 2013, the alleged disability onset date, through November 10, 2016, the date of the ALJ's decision.

(Tr. 12–21).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a

---

as consistent with the objective medical and other evidence in the individual's record. Id. A symptom is the individual's own description or statement of his or her physical or mental impairment(s). See 20 C.F.R. §§ 404.1528(a) and 416.928(a).

Under the regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. SSR 16-3P. However, if an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process set forth in the regulations. See 20 C.F.R. §§ 404.1529 and 416.929.

Stogner v. Comm'r of Soc. Sec. Admin. 2018 WL 1242049, at *6–7 (E.D. Tex. Mar. 8, 2018). SSR 16-3P applies to the ALJ's decision in the instant case, which was rendered after SSR 16-3P became effective on March 16, 2016. Davis v. Berryhill, 2017 WL 3701689, at *11 n.13 (N.D. Tex. Aug. 10, 2017), report & recommendation adopted, 2017 WL 3674856 (N.D. Tex. Aug. 25, 2017). Although the Commissioner's rulings "are not binding on this court, we have consulted them 'when the statute at issue provides little guidance.'" Bryant v. Astrue, 272 F. App'x 352, 356 (5th Cir. 2008) (quoting Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001)); accord Ramirez v. Colvin, 606 F. App'x 775, 778 (5th Cir. 2015).

conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Richard ex rel. Z.N.F.</u>, 480 F. App'x at 776; <u>Stringer</u>, 465 F. App'x at 363–64; <u>Perez</u>, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. <u>Halterman ex rel. Halterman v. Colvin</u>, 544 F. App'x 358, 360 (5th Cir. 2013) (citing <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000)); <u>Stringer</u>, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. <u>McCaskill v. Dep't of Health & Human Servs.</u>, 640 F. App'x 331, 332-33 (5th Cir. 2016) (citing <u>Perez</u>, 415 F.3d at 461); <u>Luckey v. Astrue</u>, 458 F. App'x 322, 324 (5th Cir. 2011) (citing <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990)); <u>Newton</u>, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. <u>Joubert v. Astrue</u>, 287 F. App'x 380, 382 (5th Cir. 2008) (citing <u>Perez</u>, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Ray v. Barnhart</u>, 163 F. App'x 308, 311 (5th Cir. 2006) (citing <u>Perales</u>, 402 U.S. at 390); <u>Perez</u>, 415 F.3d at 461.

To be considered disabled and eligible for period of disability and DIB, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2016). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[2] Id. §§ 404.1520, 416.920; <u>Alexander v. Astrue</u>, 412 F. App'x 719, 720 (5th Cir. 2011) (citing <u>Audler v. Astrue</u>, 501 F.3d 446, 447 (5th Cir. 2007)); <u>Perez</u>, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. <u>Id.</u>

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. <u>Id.</u> §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. <u>Id.</u> §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. <u>Id.</u> §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. <u>Id.</u> §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. <u>Id.</u> § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The claimant has the burden of proof under the first four parts of the inquiry. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.    Factual Background

Robertson testified at the hearing that he was 51 years old, left-handed, and had a twelfth-grade education. (Tr. 85; 92). He stated that his work history during the last 15 years consisted of a sales manager position at Rex TV and Appliance and an assistant manager position at Walmart. (Tr. 85–86). His job duties as Walmart assistant manager included hiring and firing employees, preparing schedules, overseeing inventory, completing evaluations, loading and unloading merchandise from delivery trucks, assisting customers with products, building displays and moving displays to stocking areas. (Tr. 86).

7

Robertson testified that his assistant manager position required clerical abilities, including drafting and filing written reports and using computers. (Tr. 86–87). He said that the physical abilities required for an assistant manager include lifting, bending, climbing ladders, crawling in bins, unloading 18-wheeler trucks, building and tearing down displays and stocking shelves. (Tr. 87–88).

Robertson testified in detail about the process of unloading freight from the trucks and the placement of these items into the warehouse portion of the Walmart store. (Tr. 87). He stated that the Walmart warehouse has four tiers of storage, which he described as "metal bins." Id. Robertson said that he accessed these bins either by ladder or by man lift. Id. He stated that accessing the bins required working above his shoulder level. Id. Robertson described that the process of unloading the 18-wheeler trucks involved first setting up "rollers" that would roll down 20 to 25 feet into the warehouse. (Tr. 88). Robertson testified that he would physically pick up the freight from the trucks, place the freight on the rollers and slide the freight down the roller to an empty pallet. Id. He stated that there are empty pallet stations located throughout the warehouse at the ends of each roller. Id. Robertson said that he would physically take the freight off of the roller, place the freight onto the pallets, and roll the pallets to their designated stocking areas. Id. He testified that the everyday weight he dealt with as an assistant manager was about 75 pounds. Id. Robertson stated that on an extraordinary day, he might have to deal with up to 100 pounds. Id.

8

Robertson stated that he would move the rollers around the warehouse by either physically pushing the rollers or by using a "pallet jack," which would be inserted into the pallet, jacked up and physically pulled by Robertson, similarly to pulling a wagon. (Tr. 88–89). He testified that the average weight of a pallet was 80 to 100 pounds, but that sometimes the weight would exceed 100 pounds. (Tr. 89). Robertson testified that during the loading and unloading process, he would climb in and out of the 18-wheelers and up and down the various tiers in the warehouse. Id. He would access the trucks and tiers either by stairs or ladder. Id. He was required to reach, pull and physically remove items from the trucks and tiers. Id. Robertson testified that after the freight was stored in the warehouse, he would take the items onto the Walmart store sales floor and place them in their designated stocking areas. (Tr. 90).

Robertson stated that if Walmart was short on stockers on a particular day, he was responsible as assistant manager for stocking the items in their designated retail areas. Id. Robertson testified that there was a stocker shortage the day he suffered a work-related injury in May 2013. Id. On the day of his injury, Robertson was assigned to move some displays in "grocery action alley," which Robertson described as the center section of the grocery aisles in which displays are situated adjacent to the shelves. Id. Robertson testified that he was instructed to move each existing display "up one notch" in order to make room for a new display. Id. Robertson said that he attempted to move one of the displays, found the weight to be excessive, and this weight caused him to injure and jam his neck. Id.

9

Robertson testified that Walmart assistant managers and stockers are not subject to a standard lifting restriction of 50 pounds. (Tr. 91). Robertson stated that the heaviest weight he had to lift in his sales manager position at Rex TV and Appliance consisted of big-screen television sets weighing 80 to 100 pounds. (Tr. 92).

Robertson testified that he experiences pain on a daily basis following his workplace injury. (Tr. 93). He stated that according to the diagnoses given to him by Drs. Awasthi and Maidoh, he has a severe neck injury, nerve damage in his left and right arms, numbness in his hand, neck spasms and a bulging disk in his neck, all resulting from the workplace injury in May 2013. Id. Robertson testified that the date of his workplace injury is the date he alleges as the onset date for his disability claim. Id.

Robertson testified that his pain level on a scale of zero to 10 – zero meaning no pain and 10 meaning excruciating pain – ranges from seven to eight daily. Id. Robertson stated that looking up and down, sunlight, lifting and storing objects and extended periods of walking aggravate his pain levels. (Tr. 94). He stated that he is able to climb, lift objects overhead and walk long distances, but that he cannot perform these activities without suffering pain and aggravation in his neck. Id.

Robertson stated that after his workplace accident, he has had difficulty reading his Bible. He testified that before the accident, he read his Bible daily, for hours at a time, while sitting. (Tr. 95). Robertson stated that after the accident, he can no longer read for several hours, must always read with a neck pillow and must elevate the Bible on a lap

pillow to avoid having to look down frequently. Id. He stated that he has an audio version of the Bible that he listens to on his tablet. (Tr. 95–96). However, Robertson stated that listening to the Bible is not the same as reading it, because reading the Bible allows him to "grasp it better" and "get[] into the spirit of the writer." (Tr. 96).

Robertson testified that the heat of the sun causes his neck pain to increase. Id. He stated that he wears a sweat band around his neck to keep it cool when he is in direct sunlight. Id. Robertson testified that he takes medications for pain, nausea, anxiety, depression and nerve damage. For pain, he takes Neurontin.[3] (Tr. 97). He stated that the side effects from his medications are dizziness, nausea, sleepiness and inability to concentrate. Id. Robertson testified that his pain causes him difficulty in getting a good night's sleep. (Tr. 98). He said that it takes him one to two hours to fall asleep every night and that his pain wakes him up after about two and a half hours. Id. He stated that his pain during the day is different from the pain he suffers at night. Id. He said that the pain during the day is a throbbing pain with spasms, and at night he has neck pain and arm pain from his nerve damage, which results in restless sleep as he tries to find a comfortable position. (Tr. 99). He testified that he deals with the pain by taking his medications and using a heating pad when he is trying to fall asleep. Id.

---

[3] Neurontin is a prescription drug used "[f]or the adjunctive treatment of partial seizures with or without secondary generalized tonic-clonic seizures" and [f]or neuropathic pain associated with postherpetic neuralgia." PDR+ (PDR, LLC 2018), https://www.pdr.net/drug-summary/Neurontin-gabapentin-2477.4218 (lasted visited December 14, 2018).

Robertson testified that he sees Dr. Parsa, a psychiatrist at Lafourche Mental Health Center, concerning his depression and anxiety. (Tr. 99–100). Robertson testified that Dr. Parsa diagnosed Robertson with severe and chronic depression and anxiety: specifically, anxiety resulting from worries that he will not be able to provide for his family. (Tr. 100). Robertson stated that he was always able to provide for his family during the years he was working, but now that he is not working, it is becoming hard to do so. Id. He stated that he has four children, ages 16 through 24. Id. He testified that after his workplace injury, he is unable to attend all of his children's events and activities, as he did before the injury. (Tr. 101). He stated that he cannot attend his daughter's band performances anymore, because sitting in bleachers without support for the back of his neck causes him pain. Id. Robertson testified that he attends church. Id. He said that he used to sit in the front row at church, but after his injury he is unable to crane his neck to look up at the pulpit while the pastor is teaching. Id. Now he sits in the back of the church so that he can look at the pastor without aggravating his neck. Id.

Robertson testified that on an average day, he gets up at 6:30 a.m., when his pain wakes him up every morning. Id. After he wakes up, he lies in bed for a moment, rolls over onto his left side, and uses his right hand to push himself up because he cannot use his left hand. (Tr. 102). He then gets up and goes into the kitchen to make coffee for himself and his wife, who works as a nurse practitioner. Id. His wife helps him with the pain in his neck by placing a heating pad on him and giving him neck massages. Id. Once his children are

dropped off at school, Robertson stated that he gets sleepy again, so he returns to the house to take a nap. Id. Around 10:00 a.m., Robertson picks up his daughter from school to take her to band practice. (Tr. 102–03). Band practice only lasts one hour, so Robertson waits in the parking lot for the duration of practice, and then drives his daughter back to school. (Tr. 103). After dropping off his daughter, Robertson will either run errands or return home. Id. In the evenings, Robertson will cook dinner for himself and his family. Id. He testified that it is hard to cook large meals like he used to before his injury, and that he particularly has trouble stirring food in pots. Id. Robertson will help his children with any home work they might have. Id. Then he will take his medications, read his Bible, and go to sleep between 10:00 and 11:00 p.m. (Tr. 104). Robertson testified that he can still perform certain household chores, including folding towels, wiping down furniture, cleaning the house and making the bed. Id. He testified that before his injury he would cut his own grass, but he is no longer able to do so. Id.

Robertson stated that his depression results from his constant and severe pain. (Tr. 104–05). He said that he has trouble concentrating and often loses focus while performing simple household chores. (Tr. 105). He testified that he has never been hospitalized for mental health reasons. Id.

C.    Vocational Expert Testimony

A vocational expert, Beth Drury, testified that plaintiff's work as a Walmart assistant manager and Rex TV and Appliance sales manager was skilled at a heavy exertional level.

(Tr. 107). Drury stated that Robertson developed several managerial skills in his assistant manager position, including application of mathematical skills to keep records, drafting reports, keeping inventory, dealing with individuals and groups of people with various interests, dealing tactfully with the public and employees, planning, organizing, and directing the work of others. (Tr. 107–08). Drury testified that the mathematical, record-keeping and inventory skills fall into the "sedentary to light" category, and that the planning and organizing the work of others skills range from "sedentary" to "heavy." Id.

The ALJ posed a hypothetical of a person with the same age, education and work experience as Robertson who can perform light work with no climbing of ladders, ropes or scaffolds; who can occasionally stoop, crouch, kneel or crawl; must avoid concentrated exposure to extreme heat and use of moving machinery; and must be able to perform work tasks that are simple, routine and repetitive. (Tr. 108). Drury stated that such a person could not perform plaintiff's past relevant work, but would be able to work as a cashier, information clerk or inspector, all of which are jobs available in the national economy. (Tr. 109).

The ALJ then posed a second hypothetical identical to the first, except with the additional job function of occasional overhead reaching with the dominant left upper extremity. Id. Drury stated that such a person could perform the same jobs as the ones listed in response to the first hypothetical. Id.

The ALJ then posed a third hypothetical identical to the second, except with the added job function of a sit/stand option allowing the person to alternate positions between sitting and standing at the workstation on an occasional basis. (Tr. 110). Drury stated that such a person could perform that same jobs as the ones responsive to the first and second hypotheticals. Id.

The ALJ then posed a fourth hypothetical identical to the third, except with the added job function of frequent interaction with the public, co-workers and supervisors. Id. Drury stated that such a person could perform the same jobs as the ones responsive to the first, second and third hypotheticals. Id.

The ALJ then posed a fifth hypothetical identical to the fourth, except with the added requirement of occasional rotation, flexion and extension of the neck. (Tr. 111). Drury testified that there are no jobs in the national economy that such a person could perform. Id.

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the evidence. (Tr. 15–20). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1. The ALJ's findings regarding Robertson's residual functional capacity are supported by substantial evidence.

15

2. The ALJ followed proper standards in determining how much weight to accord the medical opinions.

Because plaintiff's arguments regarding his first assignment of error implicate his similar arguments regarding his second assignment, the court addresses them together.

Before deciding at step four of the sequential evaluation whether a claimant can return to his past relevant work, the ALJ must determine his residual functional capacity, which is the person's "ability to do physical and mental tasks on a sustained basis despite limitations from h[is] impairments. In determining the [residual functional capacity], the Commissioner must consider all of a claimant's impairments, including those that are not severe." Giles v. Astrue, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545). Residual functional capacity "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence." Perez, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is solely responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Taylor v. Astrue, 706 F.3d 600, 602–03 (5th Cir. 2012).

The ALJ found that Robertson has the residual functional capacity to perform light work,[4] with the following limitations: no climbing ladders, ropes or scaffolds; no more than occasional reaching with his dominant left upper extremity; no more than occasional climbing ramps or stairs; no more than occasional stooping, crouching, kneeling and crawling; no concentrated exposure to extreme heat and moving machinery; and

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

performing only simple, routine and repetitive tasks. (Tr. 15–20). She found that plaintiff had severe impairments of degenerative disc disease of the cervical spine with C7 radiculopathy, nerve damage of the neck on the left side and depression, and that plaintiff's subjective allegations were not consistent with the medical evidence of record. (Tr. 12, 17). At step four, the ALJ determined that plaintiff was unable to perform his past relevant work as a retail sales manager and assistant manager. (Tr. 20). At step five, however, the ALJ found that plaintiff could perform other available jobs that exist in significant numbers in the national economy. (Tr. 20–21).

In his first assignment of error, Robertson argues that the ALJ's residual functional capacity findings are not supported by substantial evidence. Record Doc. No. 20 at p. 2. Plaintiff also argues under his first assignment that due to his physical pain, limitations, restrictions and the mental diagnosis issued by his treating physician, "he does in fact rise to the level of a listed impairment and is therefore functionally and anatomically disabled," even though plaintiff explicitly conceded in the hearing testimony and his memorandum that his medical impairments do not rise to the level of listed impairments. (Tr. 112). Record Doc. No. 20 at p. 5. Thus, plaintiff vaguely contends that his impairments meet or medically equal one or more listed impairments. For his first assignment of error, plaintiff relies primarily on his own testimony concerning his alleged limitations and the side effects of his medications, the diagnoses of his treating physicians and psychologist, a summary of the objective findings from the medical records and the medical narrative completed by

17

his treating physician, Dr. Gregory Maidoh, on May 9, 2016. Record Doc. No. 20 at pp. 3–5. (Tr. 347–48).

Plaintiff relies upon his own testimony that he has "severe and constant daily pain on a level of 7–8 [on a 10-point scale]; apparent and obvious side effects from the medication regimen provided to [him] for both pain and nerve damage; inability to have a good night's sleep; and anxiety and depression causally related to [his] constant and severe pain and inability to provide for his family[,]" all of which plaintiff argues impact his ability to concentrate and function in a workplace environment. Record Doc. No. 20 at p. 5. Robertson adds that he "was a productive member of society as a sales manager and assistant manager, all without interruption until the work related injury of May 2013. Id. He emphasized that "the pain generated with [his] radiculopathy required continued use of narcotics, physical therapy and epidural steroid injections. Id. at p. 4.

Robertson outlines the objective findings from his medical records and the diagnoses of his treating physicians and psychologist to support his argument that "substantial medically documented evidence shows" he is "disabled from his former job" and "unable to engage in any gainful activity." Record Doc. No. 20 at p. 2–5. He cites evidence of cervical neuropathy; cervical disc disease with radicular symptomology exacerbated by neck motion and activity with restrictions of lifting, climbing, pushing and pulling; cervical displacement of an intervertebral disc without neuropathy; and disc bulges in the cervical spine and the small canal at C6 and C7, per his treating neurologist, Dr. Deepak Awasthi,

and his treating pain specialist, Dr. Michael Haydel. Id. at p. 4. Plaintiff also cites a diagnosis of major depressive disorder from his treating psychiatrist, Dr. Daren Parsa. Id.

Dr. Maidoh's medical narrative upon which plaintiff heavily relies for his disability argument is dated May 9, 2016. (Tr. 347–48). He opined that the severity of plaintiff's symptoms resulting from his cervical disc disease and radiculopathy precluded his ability to lift, climb, push and pull. (Tr. 348). Dr. Maidoh stated that the severity of plaintiff's symptoms preclude him from returning to his prior work level as a retail sales manager or assistant manager, and that "the severity of his pain precludes him from being able to return to work." Id. In her reply memorandum, defendant argues that Dr. Maidoh's clinical and laboratory findings contradict Maidoh's conclusory opinion in the May 2016 medical narrative. Record Doc. No 20 at p. 7–10. Dr. Maidoh's May 2016 clinical findings indicate that Robertson had no lost sensation in his upper extremities, despite some posterior cervical tenderness with limited range of motion; normal deep tendon reflexes; left upper extremity strength 4+/5; and normal functioning of lower extremities. (Tr. 347). These clinical observations were consistent with Dr. Maidoh's October 2014 and August 2015 clinical observations of no extremity weakness, normal muscle tone and strength, and normal posture. (Tr. 274, 664). In addition, defendant cites surveillance video evidence taken in March 2014, almost one year after his alleged disability onset date, by Workers' Compensation Louisiana showing plaintiff lifting and carrying lumber, climbing a ladder and performing yard work at his residence, as evidence that plaintiff's "alleged impairments

did not prevent him from performing a restricted range of light work." (Tr. 442–46); Record Doc. No. 22 at p. 5.

Robertson argues that Dr. Maidoh's opinions are consistent with his medical treatment records and should have been afforded great weight, and that the ALJ put undue weight on the opinions of Drs. Paul Cherry and Jack Bankhead. Record Doc. No. 20 at pp. 2–3. Plaintiff also argues that the ALJ should have given the opinions of Drs. Awasthi and Parsa greater weight, based on the fact that these doctors diagnosed him with severe impairments of the neck and spine and major depressive order. Id. at pp. 2–4. The ALJ gave little weight to the opinion of Dr. Maidoh and did not consider the opinions of Drs. Awasthi and Parsa. (Tr. 20). Plaintiff's arguments implicate his assignment of error that the ALJ did not properly determine how much weight to accord the opinions of his treating physicians, which he contends should have been afforded controlling weight, as compared to the opinions of his reviewing physicians, Drs. Cherry and Bankhead.

Dr. Cherry reviewed the medical evidence and, based on the entire record, found that plaintiff has severe impairments – spine disorders and affective disorders. (Tr. 120–21). However, Dr. Cherry found that plaintiff does not meet the applicable criteria under Listings 1.04 ("Spine Disorders") and 12.04 ("Affective Disorders"). (Tr. 121). The ALJ gave great weight to Dr. Cherry's opinions and largely incorporated them into her residual functional capacity findings. (Tr. 18). Additionally, the ALJ incorporated Dr. Cherry's findings into her conclusion that Robertson does not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13).

Dr. Bankhead reviewed the medical evidence and opined that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not consistent with the objective evidence. (Tr. 122). Dr. Bankhead found that plaintiff is capable of performing light work, with the following postural limitations: plaintiff could only occasionally climb ladders, ropes or scaffolds; and frequently stoop, kneel, crouch and crawl. (Tr. 123, 127). The ALJ gave partial weight to Dr. Bankhead's opinions and partially incorporated them into her residual functional capacity findings. The ALJ concurred with Bankhead's conclusion regarding plaintiff's ability to perform light work, but found that the record indicated that plaintiff's ability to perform postural activities was more limited than Bankhead had concluded. (Tr. 15, 19). The ALJ ultimately found more restrictive postural limitations than those recommended by Bankhead. (Tr. 15).

Before addressing the ALJ's findings regarding the weight she gave the opinions of Drs. Cherry and Bankhead compared to the weight given to Drs. Maidoh, Awasthi and Parsa, the court finds that Robertson's arguments are unavailing insofar as they assert that the ALJ erred in her assessment of the evidence supporting her findings. Plaintiff argues that the ALJ failed to consider in her residual functional capacity analysis plaintiff's testimony and evidence in the record that he is "unable to engage in any gainful activity." Record Doc. No. 20 at p. 2. As discussed above, plaintiff testified that he is in pain daily, suffers side effects from his medication regimen and has anxiety and depression, all of which he alleges affect his

ability to function in a workplace environment. Id. at p. 5. However, plaintiff's testimony alone is insufficient to establish disability because subjective complaints of pain or other symptoms must be corroborated by objective medical evidence. Quijas v. Astrue, 298 F. App'x 391, 393 (5th Cir. 2008) (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001)); Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989). The objective medical record and plaintiff's reports to his treating physicians are substantial evidence that plaintiff's pain was alleviated and his mobility was improved by regular physical therapy treatment and taking his prescribed medications. (Tr. 294–304, 354, 529, 531, 535, 539, 541, 543, 545, 549). Although plaintiff testified that his medications caused side effects of drowsiness and dizziness, plaintiff reported multiple times to his pain management specialist, Dr. Haydel, that he was having "no side effects" from his medications. (Tr. 294–96). In addition, evidence from Workers' Compensation Louisiana contradicts plaintiff's testimony that his impairments render him incapable of climbing and overhead reaching, based on a surveillance video taken of plaintiff lifting large pieces of lumber, performing yard work, and climbing up and down a ladder, sometimes with a utility belt, on several days in March 2014, well after his alleged disability onset date of May 15, 2013. (Tr. 94, 442–46).

As outlined above, plaintiff cites his diagnoses of severe impairments of the neck and spine and major depressive order to support his argument that he is disabled. Record Doc. No. 20 at pp. 3–4. However, plaintiff does not explain how these objective findings render him disabled. The ALJ concluded at step two of the sequential evaluation that plaintiff has the severe impairments of degenerative disc disease of the cervical spine with C7 radiculopathy,

nerve damage of the neck on the left side and depression, (Tr. 12), but the mere diagnosis of and treatment for an impairment do not establish a claimant's disability claims. Bordelon v. Astrue, 281 F. App'x 418, 422 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon v. Barnhart, 184 F. App'x 430, 431 (5th Cir. 2006); Harris v. Barnhart, 65 F. App'x 129, 132 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87–88 (1st Cir. 1991).

In addition, plaintiff's argument that his severe impairments rise to the level of a listed impairment is not substantially supported by the medical evidence. Whether an impairment or combination of impairments meets a listing is a medical question that can be answered only by medical evidence. 20 C.F.R. §§ 404.1526(b), 416.926(b); McCuller v. Barnhart, 72 F. App'x 155, 158 (5th Cir. 2003); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); McKnight v. Astrue, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), report & recommendation adopted, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), aff'd, 340 F. App'x 176 (5th Cir. 2009). "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary." Anderson v. Astrue, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Falco, 27 F.3d at 162). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal

23

in severity to <u>all</u> the criteria for the one most similar listed impairment." <u>Zebley</u>, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a); SSR 83-19, at 91) (emphasis in original). Robertson does not identify any listing or cite to any specific evidence that he meets or medically equals a listed impairment.

As to plaintiff's arguments regarding the minimal weight the ALJ gave to the opinions of his treating physicians, Drs. Maidoh, Awasthi and Parsa, compared to the partial to great weight to the reviewing physicians, Drs. Cherry and Bankhead, the court finds that the ALJ applied the appropriate legal standards and that substantial evidence supports her decision. It is well established that

> [t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is <u>not inconsistent with</u> . . . <u>other substantial evidence</u>. The opinion of a specialist generally is accorded greater weight than that of a non-specialist.
>
> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. <u>[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown.</u> Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

<u>Newton</u>, 209 F.3d at 455–56 (quotations and citations omitted) (ellipsis and brackets in original) (emphasis added).

24

The ALJ's decision demonstrates that she carefully considered and weighed all the evidence. Dr. Cherry reviewed the entire medical record as of May 21, 2015. (Tr. 120–21). In assessing plaintiff's residual functional capacity, the ALJ afforded great weight to Dr. Cherry's opinions. (Tr. 18). The ALJ's stated reasons for affording Dr. Cherry's opinion great weight were that his conclusions were consistent with plaintiff's testimony and the objective findings in the record: specifically, that plaintiff had mild restrictions of activities of daily living; mild difficulties maintaining social functioning; moderate difficulties in concentration persistence or pace; and no repeated episodes of decompensation. (Tr. 18). Dr. Bankhead reviewed the entire medical record as of April 15, 2015. (Tr. 122–25). The ALJ afforded partial weight to Dr. Bankhead's opinions because she found them supported by plaintiff's activities of daily living and the record as a whole, subject to certain postural modifications, based on the ALJ's conclusion that Dr. Bankhead's suggested modifications were not restrictive enough in light of objective evidence that plaintiff has limitations in his cervical range of motion. (Tr. 19).

The ALJ gave little weight to Dr. Maidoh's opinions from May 9, 2016. (Tr. 347–48). The ALJ found that Dr. Maidoh's opinion that plaintiff was unable to return to work was inconsistent with claimant's activities of daily living and the record as a whole, and that his argument lacked any substantive support. (Tr. 19). A physician's statement that a claimant is unable to work is not a medical opinion but rather an administrative finding that is reserved to the Commissioner. 20 C.F.R. 404.1527(e)(1)(3). It is well established that a physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of

the Act, because that is a determination that may be made only by the Commissioner. <u>Miller v. Barnhart</u>, 211 F. App'x 303, 305 (5th Cir. 2006) (citing <u>Frank v. Barnhart</u>, 326 F.3d 618, 620 (5th Cir. 2003)); <u>Chambliss</u>, 269 F.3d at 522; <u>Tamez</u>, 888 F.2d at 336 n.1. The ALJ highlighted the video surveillance evidence of plaintiff lifting large pieces of lumber, performing yard work and climbing a ladder, <u>after</u> his alleged disability onset date, together with record evidence of plaintiff's positive response to physical therapy treatment to support her argument for giving little weight as to Dr. Maidoh's opinion. (Tr. 19). The ALJ's reasoning is supported by substantial evidence.

The opinions of Drs. Awasthi and Parsa were not considered by the ALJ. To support his argument that their opinions should have been given greater weight, Robertson cites only to Awasthi's and Parsa's diagnoses of severe impairments of the neck and spine and major depressive order. Record Doc. No. 20 at pp. 2–4. As noted above, the existence of the severe impairments reflected in these diagnoses are <u>not in dispute</u>, because the ALJ found at step two that plaintiff has degenerative disc disease of the cervical spine with C7 radiculopathy, nerve damage of the neck on the left side and depression. (Tr. 12). Moreover, a physician's mere diagnosis of an impairment does not establish a claimant's disability claims. <u>Bordelon</u>, 281 F. App'x at 422. The ALJ's non-consideration of the opinions of Drs. Awasthi and Parsa is substantially supported by the evidence.

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" <u>Fontenot v. Colvin</u>, 661 F. App'x 274, 277 (5th Cir. 2016) (quoting <u>Taylor</u>, 706 F.3d at 603) (brackets in original). "The ALJ 'is entitled to determine the

credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'"

Ramirez, 606 F. App'x at 779 (quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985));

accord Yates v. Colvin, 606 F. App'x 225, 229 (5th Cir. 2015) (citing Greenspan v. Shalala,

38 F.3d 232, 237 (5th Cir. 1994)). "In declining to give controlling weight to [Drs. Maidoh,

Awasthi, and Parsa] . . . [,] the ALJ performed [her] role of weighing conflicting evidence and

resolving the conflict, and [the court] perform[s] [its] limited role of ensuring that this decision

is supported by substantial evidence, which it is." Heck v. Colvin, 674 F. App'x 411, 415 (5th

Cir. 2017) (citing Greenspan, 38 F.3d at 237).  When the ALJ has relied on reports from

examining and reviewing physicians and adequately dealt with any dispute between them, her

residual functional capacity determination "must be upheld under the substantial evidence

standard, because reliance on the analysis of these doctors is more than a mere scintilla, and

any evaluation of the accuracy of the analysis is beyond the scope of this court's review."

Fontenot, 661 F. App'x at 277 (citing Taylor, 706 F.3d at 603; Perez, 415 F.3d at 461; Moore

v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).

As she is required to do, the ALJ considered all of Robertson's symptoms, including

pain, and the extent to which the symptoms can be reasonably accepted as consistent with the

objective medical evidence and other evidence in Robertson's records. Luckey, 458 F. App'x

at 326 (citing Scott, 770 F.2d at 485); Perez, 415 F.3d at 462. The ALJ is bound to explain her

reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow

formalistic rules in his articulation.'" Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir.

2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)). Even under the revised

27

standards of SR16-3P, which applied to the ALJ's decision and merely clarified existing regulations, the ALJ's task remains the same. See Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (The point of the new guidance is to "clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."); Levyash v. Colvin, 2018 WL 1559769, at *7-8 (D.N.J. Mar. 30, 2018) ("[W]hile SSR 16–3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same."); accord Mayberry v. Colvin, 2016 WL 7686850, at *5 (S.D. Tex. Nov. 28, 2016) (citing Lockwood v. Colvin, No. 15 C 192, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016); Burnstad v. Colvin, 2016 WL 4134535, at [*]11 n.9 (D. Or. Aug. 2, 2016); Dooley v. Comm'r of Soc. Sec., 2016 WL 4046777, at *5 n.1 (6th Cir. 2016)).

The ALJ has the responsibility to evaluate the credibility of the witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164), and the consistency between the witness's testimony and the other evidence in the record. Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459). The ALJ's explanation of her reasons for finding plaintiff not entirely credible or that plaintiff's testimony is inconsistent with the evidence as a whole is all that is required. Undheim v.

28

Barnhart, 214 F. App'x 448, 450-51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); Falco, 27 F.3d at 164); James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999). The ALJ complied with these standards in the instant matter.

The ALJ need not address each aspect of the record in detail. "[T]here will always be some evidence that is not specifically discussed in the Commissioner's decision. [The court's] review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here. Likewise, the Commissioner used the proper legal standards to evaluate the evidence, and the ALJ adequately resolved inconsistencies in the record." Giles, 433 F. App'x at 251. Accordingly, plaintiff's assignments of error lack merit.

## CONCLUSION

The ALJ used the appropriate legal standards to weigh and resolve conflicts in the medical opinion evidence. Her residual functional capacity findings and determination that Robertson can perform light work, with certain postural and other limitations, are supported by substantial evidence.

## **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be denied and his complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[5]

New Orleans, Louisiana, this _____17th_____ day of December, 2018.

_____
            JOSEPH C. WILKINSON, JR.
        UNITED STATES MAGISTRATE JUDGE

---

[5] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.